UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

EVANSTON INSURANCE COMPANY,

    Plaintiff,

v.                                            Case No. 1:09-CV-996

COGSWELL PROPERTIES, LLC,         HON. GORDON J. QUIST

    Defendant.
_____/

**OPINION**

Plaintiff, Evanston Insurance Company ("Evanston"), has filed a Complaint to Vacate Appraisal and for Declaratory Judgment against Defendant, Cogswell Properties, LLC ("Cogswell"), requesting that the Court vacate an appraisal award to Cogswell of the actual cash value of an insured loss on the grounds of manifest mistake (Count I) and bad faith (Count II). In addition, Evanston seeks a declaratory judgment (Count III) that Evanston's liability to Cogswell is limited to Cogswell's "financial interest in the Covered Property."

The parties have filed cross motions for summary judgment on Evanston's claims. In addition, Cogswell has filed a motion for summary judgment asserting that it is entitled to penalty interest on the appraisal award under M.C.L. § 500.2006 in the event the Court grants its motion for summary judgment on Evanston's claims. On July 8, 2010, the Court heard oral argument by telephone, during which the Court requested supplemental briefing on whether an error of law by the appraisal panel constitutes manifest mistake. The parties have submitted their respective briefs, and the matter is now ready for decision.

For the foregoing reasons, the Court will: (1) grant Cogswell's motion for summary judgment in part and deny it in part; (2) grant Evanston's motion for summary judgment in part and

deny it in part; (3) deny Cogswell's motion for summary judgment regarding penalty interest as premature; and (4) vacate the appraisal award and remand the matter to the appraisal panel.

## I. BACKGROUND AND PROCEDURAL HISTORY

Cogswell purchased the former Rock Tenn Paper Mill property (the "Property") in Otsego, Michigan in September of 2006 for $70,000.00 at a tax foreclosure sale. The Property consists of over 20 interconnected or adjacent buildings totaling approximately 440,700 square feet. Cogswell purchased an insurance policy from Evanston on the Property providing coverage of $1,000,000.00 for real property and $250,000.00 for business personal property (the "Policy"). The Policy covered the period of November 16, 2006, to May 6, 2007. On November 16, 2006, the date the Policy was issued, a fire destroyed approximately 15,700 square feet of the Property.

The Policy contained a coinsurance provision that reduced Evanston's liability for payment of any loss if the limit of insurance under the Policy did not exceed 80% of the value of the Property at the time of the loss. Evanston's appraiser determined that the actual cash value of the Property at the time of the loss exceeded $10,000,000.00. Applying the coinsurance provision, Evanston determined that it was liable for only approximately 12% of the loss, resulting in a net payment to Cogswell of $36,918.27. Cogswell disputed Evanston's assessment and hired its own appraiser, who valued the Property at $960,000.00.

On April 23, 2008, Evanston filed a petition in the Allegan County Circuit Court for the appointment of an appraiser pursuant to M.C.L. § 500.2833 and the Policy's appraisal provision, which provides, in part:

> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. . . .

2

(Policy ¶ E.2. Loss Conditions.) Evanston filed its petition because the parties were unable to agree on an umpire. On May 15, 2008, while Evanston's petition was pending, Cogswell filed a counterclaim alleging breach of contract and violation of the Michigan Uniform Trade Practices Act, M.C.L. § 500.2001, *et seq.*

On May 22, 2008, Evanston removed the case to this Court based upon Cogswell's counterclaim. That same day, the parties agreed upon an umpire, William W. Jack, Esq. Subsequently, the parties filed cross motions for summary judgment on Cogswell's counterclaim. On January 23, 2009, the Court issued a Memorandum Opinion and a Judgment denying Cogswell's motion for summary judgment and granting Evanston's motion for summary judgment. In particular, the Court ruled that: (1) Evanston was not equitably estopped to deny, and did not admit, that the Property was worth $1,000,000.00 when it insured the Property for that amount (1/23/09 Mem. Op. at 3-4); (2) the application of coinsurance was not a coverage question for the Court, but rather was an issue relating to value to be determined by the appraisers and the umpire (*id.* at 4-5); and (3) because the Policy does not define "actual cash value" (ACV), the appraisal panel should employ the "broad evidence rule," under which "all evidence relevant to an accurate determination of the Property's value must be considered." (*Id.* at 6-8.)

Evanston's appraiser, Dan Dowell, and Cogswell's appraiser, Ethan Gross, prepared their respective reports for submission to the umpire. Dowell provided valuations for ACV based upon three different approaches: (1) replacement cost less depreciation; (2) market value; and (3) market value based upon the actual purchase price of $70,000.00. Under the replacement cost less depreciation approach, Dowell determined that the value of the Property was $9,313,997.88 and that the value of the loss (the damaged portion of the property) was $704,462.34. Using the market value approach, Dowell determined that the value of the Property was $1,540,000.00 and the value of the

3

loss was $100,000.00. Finally, using market value based on actual purchase price, he determined that the value of the Property was $70,000.00 and the value of the loss was $4,543.00.

Gross, on the other hand, asserted that the umpire should use a blended approach to determining value. That is, Gross determined that the value of the Property using a market value analysis was $960,000.00. Using a different measure for the loss – replacement cost less depreciation – he determined that the value was $958,560. Thus, Gross requested the umpire to use a market value approach to value the entire Property just before the fire and to use a replacement cost less depreciation approach to value the damaged portion of the Property just before the fire.

The umpire followed Gross's recommendation and used two different methods to determine ACV. First, using Dowell's market value-based valuation of the Property, he determined that the value was $1,540,000.00. Second, using Gross's replacement cost of $1,534,135.28 for the damaged portion (or loss), reduced by Evanston's depreciation number, the umpire determined the value of the loss to be $736,384.89. Cogswell's appraiser, Gross, agreed with the umpire's determinations of the ACV of the Property and loss, and an award was entered on September 29, 2009. On October 1, 2009, Cogswell demanded payment from Evanston in the amount of $554,553.49, a figure Cogswell determined by applying the coinsurance formula to the ACV of the loss from the appraisal award and deducting the amount of Evanston's prior payment to Cogswell and Cogswell's deductible. Evanston declined to pay Cogswell and instead filed the instant lawsuit.

## II. MOTION STANDARD

Although two of the issues presented to the Court in the instant motions involve limited review of an appraisal award, Michigan courts generally follow summary judgment procedures under such circumstances, requiring the party challenging the award to present evidence establishing the grounds for relief. *Hartford Ins. Co. v. Miller*, Nos. 04-10314, 05-10092, 2006 WL 2844124, at *7 (E.D. Mich. Sept. 30, 2006) (citing *Auto-Owners Ins. Co. v. Kwaiser*, 190 Mich. App. 482,

486, 476 N.W.2d 467, 469 (1991)). Because the parties have adhered to this approach in filing their motions and supporting papers, the Court believes that summary judgment is the appropriate procedure for resolving challenges to the appraisal award.

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

### III. Discussion

As noted above, in Counts I and II of its complaint Evanston asserts two grounds for vacating the appraisal award – manifest mistake and bad faith. In Count III, Evanston seeks a declaratory judgment, in the alternative, that pursuant to the Policy its liability does not exceed Cogswell's "financial interest in the Covered Property," which Evanston contends is the $70,000 Cogswell paid for the Property shortly before the fire.

The statutory appraisal process for determining the amount of loss for purposes of insurance claims is akin to a common law arbitration. *Kwaiser*, 190 Mich. App. at 486, 476 N.W.2d at 469 (citing *Davis v. Nat'l Am. Ins. Co.*, 78 Mich. App. 225, 232, 259 N.W.2d 433, 437 (1988)). This statutory process is considered both "a substitute for judicial determination" and "a simple and inexpensive method for the prompt adjustment and settlement of claims." *Thermo-Plastics R & D,*

*Inc. v. Gen. Accident Fire & Life Assurance Corp.*, 42 Mich. App. 418, 422, 202 N.W.2d 703, 706 (1972) (citation omitted). In *City of Ferndale v. Florence Cement Co.*, 269 Mich. App. 452, 712 N.W.2d 522 (2006), the Michigan Court of Appeals summarized the scope of review of common law arbitration awards as follows:

> Common-law arbitration is not subject to as strict a standard of review as is statutory arbitration. Rather, judicial review of a common-law arbitration award is limited to instances of bad faith, fraud, misconduct, or manifest mistake, and an award will be upheld absent "'(1) fraud on the part of the arbitrator; (2) fraud or misconduct of the parties affecting the result; (3) gross unfairness in the conduct of the proceeding; (4) want of jurisdiction in the arbitrator; (4) violation of public policy; [or] (6) want of the entirety in the award.'"

*City of Ferndale v. Florence Cement Co.*, 269 Mich. App. 452, 460, 712 N.W.2d 522, 527 (2006) (internal citations omitted). Where a party claims that an award was based upon a legal error, a reviewing court applies the following standard:

> "[W]here it clearly appears on the face of the award or the reasons for the decision as stated, being substantially part of the award, that the arbitrators through an error in law have been led to a wrong conclusion, and that, but for such error, a substantially different award must have been made, the award and decision will be set aside."

*Detroit Auto. Inter-Ins. Exch. v. Gavin*, 416 Mich. 407, 443, 331 N.W.2d 418, 434 (1982) (quoting *Howe v. Patrons' Mut. Fire Ins. Co.*, 216 Mich. 560, 570, 185 N.W. 864, 867-68 (1921)).

    **A.**    **The Appraisal Award Was Based Upon A Manifest Mistake**

In its January 23, 2009, Memorandum Opinion in the prior case, this Court determined that the meaning of "actual cash value" was ambiguous under the Policy but that Michigan courts employ what is commonly referred to as the "broad evidence rule." The broad evidence rule allows an appraiser to consider "'any evidence logically tending to the formation of a correct estimate of the value of the destroyed or damaged property.'" (1/23/09 Mem. Op. at 7 (quoting *Davis*, 78 Mich. App. at 233, 259 N.W.2d at 438).) Thus, the Court determined, "Michigan law favors the consideration of all evidence relevant to an accurate determination of the Property's value,"

6

therefore, "[t]he appraisers and umpire must consider all relevant evidence as they determine the Property's actual cash value." (*Id.* at 8.) Moreover, the Court found consideration of multiple valuations especially appropriate in a case such as this, where the market value approach and the replacement cost minus depreciation approach "yield vastly disparate valuations." (*Id.*)

In rendering his decision, the umpire determined that the ACV of the Property was $1,540,000.00 and the ACV of the loss was $736,384.89. Evanston does not take issue with the accuracy or validity of either number. It contends, however, that the appraisal panel improperly used two separate valuation methods: (1) market value for the entire Property; and (2) replacement value less depreciation for the loss. Evanston points out that the umpire's use of different valuation methods produced an illogical result: "the actual cash value of the loss ($736,384.89) is 48 percent of the entire property ($1,540,000) when only four percent of the property was damaged." (Pl.'s Resp. Br. at 12.) Evanston further argues that the award ignores the Court's instruction to the appraisal panel that "[a]ll evidence relevant to an accurate determination of the property's value must be considered."

Cogswell contends that there was no mistake, let alone a manifest mistake, because the Policy requires the panel to make two separate determinations, one for the ACV of the Property and one for the ACV of the loss, and nothing in the Policy, the appraisal statute, or this Court's prior order requires that the same valuation method be used to determine both values. Cogswell further argues that because the broad evidence rules permits appraisers to consider a variety of measures for determining ACV, there is no reason to preclude the appraisers from using two separate methods for the entire Property and the loss.

The purpose of the broad evidence rule is to allow appraisers more flexibility in determining the actual cash value of a covered loss though consideration of all available evidence and multiple valuation methods. Courts endorsing the broad evidence rule do so because it allows for a more

7

accurate determination of value under the particular circumstances than does the use of a single method, such as the replacement cost less depreciation method. As one court has explained, confining an appraisal to a single valuation method can produce unwarranted results:

> "Property owners in jurisdictions which have adopted the replacement-cost-less-depreciation test are able to estimate accurately the value of property when insuring it.
>
> *But the inflexibility of this rule is also its most objectionable feature. While it may be appropriate where, as in the majority of cases, the insured property is being used for its intended purposes, the test will result in excessive recovery where the property is obsolete.* Many structures today have a high replacement value because of the inflated cost of building materials even though their true commercial value - represented by rentals, prospective profits, usefulness to the present owner, location and age - is considerably less. The "moral hazard" [promoting arson by allowing recovery in excess of actual loss] against which the principle of indemnity is directed may, therefore, be increased through the use of the replacement-cost-less-depreciation test."

*Ohio Cas. Ins. Co. v. Ramsey*, 439 N.E.2d 1162, 1168 (Ind. Ct. App. 1982) (quoting Note, *Valuation and Measure Recovery Under Fire Insurance Policies*, 49 Colum. L. Rev.818, 821-22 (1949)) (emphasis and alteration in original). The broad evidence rule thus ensures that an insured is appropriately indemnified for a loss without receiving a windfall. Therefore, "the inquiry as to actual cash value should be directed toward ascertaining what amount of money will place the insured in the same position he would have been in had no fire occurred." *Messing v. Reliance Ins. Co.*, 77 N.J. Super. 531, 534, 187 A.2d 49, 51 (N.J. Super. Ct. Law Div. 1962).

Contrary to Cogswell's argument, the broad evidence rule provides no basis for the appraisers to employ one valuation method to determine the ACV of the Property and another to determine the ACV of the loss. Although the meaning of ACV under the Policy is ambiguous, however the umpire and/or appraisal panel choose to define it, e.g., market value, replacement cost less depreciation, or some other measure, they must give the terms "actual cash value" and "value" the same consistent meaning wherever they are used in the Policy unless the specific language

requires otherwise. The Policy provisions at issue provide no basis to conclude that the terms "actual cash value" and "value" have different meanings when used in reference to the entire Property as opposed to the loss. For example, under the Policy's Loss Conditions section, in the event of a loss, Evanston is obligated to "[p]ay the *value* of lost or damaged property," which it will determine "[a]t *actual cash value* as of the time of loss or damage." (Policy, ¶¶ E4.a.(1), E.7.a. (emphasis added).) Similarly, the appraisal provision provides that the appraisers must state the "value of the property" while the coinsurance provision refers to "the value of Covered property at the time of loss."

By using different valuation methods for the ACV of the Property as a whole and the ACV of the loss, the umpire improperly ascribed different meanings to ACV for each of those determinations when the Policy calls for one consistent definition of value. The particular facts and circumstances regarding the use and condition of the Property are the same regardless of whether the whole or only the loss portion is considered, and under the broad evidence rule the values of both should be determined on the same consistent basis to achieve an accurate valuation. Because there is no support in the Policy for using two different definitions, this was an error of law that substantially affected the award. Moreover, this error produced a result that is both illogical and contrary to the purposes of the broad evidence rule. As discussed above, the purpose of the rule is to allow appraisers to select an appropriate valuation method, recognizing that a one-size-fits-all approach of a single method may not permit an award that reflects the true circumstances of the loss. Requiring a consistent definition of value merely ensures that the value of the loss bears some logical relationship to the value of the entire Property. Here, the umpire's use of two valuation methods yielding "vastly different valuations" produced an award substantially at odds with the circumstances of the loss: although less than four percent of the Property was damaged, the value of the damaged portion was almost half (47.8%) of the value of the entire Property.

Cogswell suggests that this gross disparity results because the destroyed Property was worth more than the remainder, but this argument finds no support in the record. Cogswell further argues that the umpire properly used two separate valuation methods because the Policy required the umpire to determine the value of the Property just before the fire and to determine the value of the loss by estimating what it would cost to repair the damage. This argument similarly lacks support in the record and is contrary to the terms of the Policy. As Evanston notes, Cogswell did not pay for the optional coverage providing replacement cost. Instead, Cogswell is entitled only to the ACV of the loss. Simply put, the umpire's charge was to choose an appropriate measure of value and to determine the values of the Property and the loss using that measure.

In response to the Court's question during oral argument regarding legal error, Cogswell asserts that there is no basis for such a finding because no error clearly appears on the face of the award. Cogswell points out that the award merely sets forth the ACV of the Property and the ACV of the loss without disclosing the umpire's reasoning or the basis for his determinations. Cogswell suggests that the Court must limit its inquiry to this information. The Court disagrees. First, a manifest mistake does appear on the face of the award, namely, that the loss portion comprising less than four percent of the entire square footage of the Property was valued at approximately 48 percent of the whole. The magnitude of this disparity is more than what might be considered a legitimate difference of opinion; rather, it is so substantial as to suggest that the appraisal panel committed an error of law. Second, as set forth in *Detroit Automobile Inter-Insurance Exchange v. Gavin*, 416 Mich. 407, 331 N.W.2d 418 (1982):

> [w]here it clearly appears on the face of the award *or the reasons for the decision as stated, being substantially a part of the award*, that the arbitrators through an error in law have been led to a wrong conclusion, and that, but for such error, a substantially different award must have been made, the award and decision will be set aside.

*Id.* at 443, 331 N.W.2d at 434 (quotations and citation omitted). In this case, the umpire stated the reasons for his decision, which are part of the award and the record. The umpire's reasons were based upon an error of law which, if corrected, would result in a substantially different award. Cogswell's attempt to distinguish *Gavin* on the basis that it involved statutory, rather than common law, arbitration fails because *Gavin* adopted the standard of review for common law arbitration as set forth in *Howe v. Patrons' Mutual Fire Insurance Co. of Michigan*, 216 Mich. 560, 185 N.W. 864 (1921). *See id.* Thus, the above-quoted rule from *Gavin* applies to this case as well.

Finally, Cogswell cites a number of Michigan cases in which the courts were reluctant to overturn appraisal awards. For example, in *Kwaiser*, the court held that the appraisers' decision to make an award without seeing the property merely reflected the appraisers' method of determining the loss rather than a matter of coverage. 190 Mich. App. at 487-88, 476 N.W.2d at 470. Similarly, in *Mae Properties, LLC v. Home-Owners Insurance Co.*, No. 253208, 2005 WL 1048738 (Mich. Ct. App. May 5, 2005), the court held that the appraisal panel's decision to award the plaintiff an amount in excess of what the plaintiff could establish it spent through receipts merely reflected the appraisers' method of determining loss and was not a basis for vacating the award. *Id.* at *2. These cases and the others cited by Cogswell are distinguishable, however, because Evanston complains not of the method the umpire used to value the loss, but instead that the umpire adopted two definitions for ACV without any reasonable basis for doing so and contrary to the language of the Policy.

In sum, Evanston has demonstrated both a manifest mistake and an error of law requiring vacation of the appraisal award. Accordingly, the Court need not consider Evanston's alternative ground for vacation.[1]

---

[1] Evanston's alternative argument is that the appraisal panel acted in bad faith because, prior to meeting with the umpire, Cogswell's appraiser, Gross, told Evanston's appraiser, Dowell, that his net adjusted loss was around $300,000. Evanston alleges that Gross acted in bad faith because when he submitted his report to the umpire, Gross

11

### B. Evanston's Liability is not Limited to the Amount Cogswell Paid for the Property

Evanston requests, based upon the following Policy language, that the Court declare that its liability to Cogswell is limited to the amount Cogswell paid for the Property – $70,000:

4. Loss Payment

    a. In the event of loss or damage covered by this Coverage Form, at our option, we will either:

        (1) Pay the value of lost or damaged property;

        . . . .

    d. We will not pay you more than *your financial interest* in the Covered Property.

(Policy ¶ E4.a., d. (emphasis added).) Evanston argues that Cogswell's financial interest in the Property is the $70,000 purchase price because Cogswell has made no improvements to the Property since purchasing it.

Cogswell argues that Evanston waived this issue by failing to raise it prior to submitting the matter to appraisal. This argument fails, however, because the case Cogswell cites, *Angott v. Chubb Group of Insurance Cos.*, 270 Mich. App. 465, 717 N.W.2d 341 (2006), is inapposite to the present situation. In *Angott*, the court held that the insurer waived a coverage argument "when it conceded coverage in the pleadings and demanded and pursued an appraisal." *Id.* at 469, 717 N.W.2d at 345. *Angott* is distinguishable because Evanston is not raising a coverage issue, but instead merely claims that its liability is limited to Cogswell's financial interest. Because Evanston's request for appointment of an umpire and demand for appraisal was neither a coverage issue nor inconsistent with the position it now takes, Evanston has not waived its financial interest argument.

---

valued the loss at more than three times the amount he previously stated to Dowell. Cogswell has submitted an affidavit from Gross, who states that he only told Dowell that he thought the claim could be settled in the range of $300,000 to $400,000. In light of its resolution of the motion, the Court need not decide whether Dowell's and Gross's affidavits create a genuine dispute of fact for purposes of summary judgment.

12

Cogswell argues that even if Evanston did not waive its right to assert the financial interest limitation, Michigan law has rejected the same argument Evanston now raises. In *J.D.'s Pub & Grub, Inc. v. North Pointe Insurance Co.*, No. 256634, 2006 WL 2271306 (Mich. Ct. App. Aug. 8, 2006), the plaintiff was the vendee under a land contract for the sale of the insured premises for $400,000. Following a fire at the premises, the vendor, Cross, obtained insurance proceeds under a separate insurance policy and applied them to the outstanding balance of the land contract, which reduced the balance the plaintiff owed from $299,000 to $25,000. The plaintiff paid the remaining balance and obtained a deed to the premises. Thereafter, the plaintiff sued its own insurer after the insurer tendered an amount substantially below the policy limit. The insurer argued, among other things, that the policy provision limiting its liability to the insured's "financial interest in the Covered Property," limited the plaintiff's recovery to its equity in the premises. The insurer argued that because the plaintiff had paid only $101,000 at the time of the fire and the land contract vendor applied the payment he received from his insurer to reduce the balance of the land contract, payment on the building up to the limits of the policy would result in a windfall to the plaintiff. The court rejected this argument. Because the term "financial interest" was not defined in the policy, the court looked to the dictionary definitions of "financial," as "'money matters; pecuniary,'" and "interest," as "a business, cause, *etc.*, in which a person has a share, concern or responsibility . . . [or] a legal share, right, or title, as in the ownership of property or in a business undertaking . . .." *Id.* at *3 (quoting Random House Webster's Dictionary (2d college ed. 1997)). Based upon these definitions, the court reasoned:

> Contrary to defendant's argument, because plaintiff had an ownership interest in the property, its financial interest in the property was greater than its equity interest and included the value of the property as reflected by the total sale price. In *Singer v. American States Ins.*, 245 Mich. App. 370, 380; 602 NW2d 367 [sic] (2001), the Michigan Supreme Court [sic] held:

13

> It is undisputed that [the plaintiff] insured the whole property, not simply the amount that she owed under the land contract. Therefore, the amount for which defendant is liable depends on each parties' interest in the property, not any amount still owed under the land contract.
>
> Defendant offers no persuasive contrary interpretation of the term "financial interest," and offers no case law supportive of its argument. Accordingly, the trial court did not err in awarding the balance of the building proceeds owed under the policy.

*Id.* at *4.

*J.D.'s Pub & Grub* arguably supports both Cogswell's and Evanston's respective arguments. On the one hand, the court concluded that the plaintiff's financial interest in the property included both its equity interest and the unpaid balance of the land contract, i.e., "the value of the property as reflected by the total sale price." *Id.* In the instant case, because Cogswell paid cash for the Property, its equity interest is equal to the total sale price – $70,000, which, in turn, reflects the value of Cogswell's financial interest. On the other hand, *J.D.'s Pub & Grub* suggests that an insured's financial interest should be measured by the value of the property regardless of the value of the insured's equity interest. Interpreting *J.D.'s Pub & Grub* in this manner supports Cogswell's argument that its financial interest is $1,540,000.00 – the fair market value established in the appraisal proceeding.

In *Auto-Owners Insurance Co. v. Hansen Housing, Inc.*, 604 N.W.2d 504 (S.D. 2000), the Supreme Court of South Dakota considered the extent of the insured's financial interest under closely analogous facts. The insured in that case purchased a former community hospital building at public auction with intentions of converting it into an apartment for the elderly. The insured initially sought insurance in the amount of the purchase price but ultimately obtained a policy for $1.6 million after the insurer's underwriters determined that the building should be insured for that amount through co-insurance. The insured submitted a claim under the policy after the building

suffered damage when water pipes froze and burst. At the time of the loss the insured had not taken any steps toward converting the building into an apartment. The insurer denied coverage on a number of grounds and filed a declaratory judgment action. The trial court found that the claim was covered under the policy. On appeal the insurer argued that the policy provision stating that the insurer "will not pay you more than your financial interest in the Covered Property" limited its liability under the policy to the $60,000 price the insured paid for the building. The court rejected the argument:

> We are not persuaded, though, that Hansen Housing's "financial interest" in the property is limited to the amount it paid at auction. No evidence was presented that the amount paid for the building and its contents was its true fair market value. In fact, there was evidence that the purchase price was a "bargain." It cannot be assumed that the price paid was its fair market value, or that the property cannot be sold for more than what was paid for it. An insured's financial interest is the fair market value of the property. *See Zochert v. Nat'l Farmers Union Property & Cas. Co.*, 1998 SD 34, ¶ 11, 576 N.W.2d 531, 534 (defining fair market value) (quoting *Lampe Market Co. v. Alliance Ins. Co.*, 71 S.D. 120, 22 N.W.2d 427, 428 (1946)). Hanson Housing may recover its proven losses as measured against the fair market value of the property.

*Id.* at 511.

Similar to the insurer in *Auto-Owners*, in this case Evanston invokes the "financial interest" limitation in order to limit its liability under the Policy to the price Cogswell paid for the Property. As in *Auto-Owners*, however, Evanston has not shown that the $70,000.00 Cogswell paid for the Property was its fair market value or that Cogswell could not have sold the Property for more than it paid for it. In fact, as Cogswell points out, the appraisers determined that the Property's fair market value was over $1.5 million. In this regard, *J.D.'s Pub & Grub* is consistent with *Auto-Owners* and supports Cogswell's argument because the *J.D.'s Pub & Grub* court found that the insured's financial interest included the value of the property. While the court and the parties in *J.D.'s Pub & Grub* apparently accepted the purchase price as the property's fair market value, in the

15

instant case Evanston's own appraiser has determined that the Property's fair market value is far more than the price Cogswell paid.[2] Accordingly, Cogswell's financial interest in the Property is the fair market value rather than the purchase price.

### C. Cogswell's Motion for Penalty Interest is Premature

Cogswell has filed a separate motion for summary judgment in which it seeks penalty interest under the Uniform Trade Practices Act, M.C.L. § 500.2001, *et seq.* Because the Court has concluded that the appraisal award should be vacated and the matter remanded to the umpire for a new determination of the ACV of the Property and the loss, Cogswell's motion is premature. Accordingly, the Court will dismiss Cogswell's motion without prejudice. Cogswell may refile its motion following the issuance of a new appraisal award.

### IV. CONCLUSION

For the foregoing reasons, Evanston's motion for summary judgment will be granted with regard to its request that the appraisal award be vacated but denied with regard to Evanston's claim that its liability under the Policy is limited to the price Cogswell paid for the Property. Cogswell's motion for summary judgment will be denied with regard to Evanston's request for vacation of the appraisal award and granted with regard to Evanston's claim that Cogswell's financial interest is limited to the purchase price. Finally, the Court will dismiss Cogswell's penalty interest summary judgment motion without prejudice. Accordingly, the Court will vacate the appraisal award and remand the matter to the umpire for the determination of an appraisal award consistent with this

---

[2] Other courts considering the same "financial interest" provision have not limited the insured's interest to the insured's investment or equity in the property. For example, in *Interstate Gourmet Coffee Roasters, Inc. v. Seaco Insurance Co.*, 59 Mass. App. Ct. 78, 794 N.W.2d 607 (2003), the court found the term "financial interest" ambiguous and concluded that the insured's financial interest was not limited to the wholesale price of its coffee but instead was entitled to the actual cash value. *Id.* at 84-85, 794 N.W.2d at 612. In *Jam Inc. v. Nautilus Insurance Co.*, 128 S.W.3d 879 (Mo. Ct. App. 2004), the court concluded that the insured's financial interest in the property that was equal to his insurable interest, which was the full amount of the insurance proceeds payable under the policy. *Id.* at 895.

Opinion. The Court will retain jurisdiction over the case until the award is issued so that the parties may move for entry of a final judgment without the necessity of filing a new action.

An Order consistent with this Opinion will issue.


Dated: July 30, 2010                                          /s/ Gordon J. Quist
                                                              GORDON J. QUIST
                                                         UNITED STATES DISTRICT JUDGE